IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LYDIA STAMPER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 23 C 05660 |
| | ) | |
| MANUS-NORTHWESTERN ORAL HEALTH CENTER, LTD, | ) ) ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendant. | ) | |

## ORDER

For the reasons laid out in the accompanying statement, the defendant's motion to dismiss [20] is granted. If the plaintiff believes she can amend her complaint to overcome the issues identified in the order below, she may file an amended complaint by August 7, 2025. Failure to do so will result in dismissal of the case.

## STATEMENT

1. **Background**

Plaintiff Lydia Stamper filed this action against Manus-Northwestern Oral Health Center, Ltd. ("Manus" or "Manus Dental"), alleging that Manus's aggressive marketing by text messaging violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. Am Compl. ¶¶ 1-3, ECF No. 16. Stamper claims to have received texts advertising Manus's services on at least a monthly basis from September 2022 to January 2023, despite repeatedly responding "stop" in an attempt to unsubscribe in the manner the messages instructed. *Id.* at 2-5.

In the motion to dismiss now under review, Manus registers two responses. First, it argues that the regulation it allegedly violated does not apply because its texts did not constitute "call[s] for telemarketing purposes." Def.'s Mot. to Dismiss 5 ("Motion"), ECF No. 20 (quoting 47 C.F.R. § 64.1200(d)). Alternatively, Manus maintains that Stamper consented to the texts and never revoked her consent by replying "STOPALL" as instructed. *Id.* at 7.

2. **Discussion**

In 1991, Congress enacted the Telephone Consumer Protection Act ("TCPA") in response to "outrage[] over the proliferation of intrusive, nuisance calls to [consumers'] homes from telemarketers." 47 U.S.C. § 227 note, Pub. L. No. 102-243, § 2(6), 105 Stat. 2394, 2394. The Act empowers the Federal Communications Commission ("FCC" or "Commission") to promulgate

regulations "concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 7 U.S.C. § 227(c)(1)-(2); *see also id.* § 227(c)(5) (creating a private right of action against those who violate FCC regulations).

Pursuant to the TCPA, the FCC promulgated 47 C.F.R. § 64.1200(d), the provision now under review. *See Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 324 (D. Mass. 2020) (clarifying that 64.1200(d) was promulgated pursuant to 7 U.S.C. § 227(c)). Section 64.1200(d) provides: "No person or entity shall initiate any artificial or prerecorded-voice telephone call pursuant to . . . this section or any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls." Those procedures require, among other things, that any telemarketer who "receives a request . . . not to receive calls" must "record the request," "place the subscriber[] . . . on [a] do-not-call list," and "honor [the] . . . do-not-call request within a reasonable time from the date such request is made." *Id.* § 64.1200(d)(3).

### a. Applicability of § 64.1200(d) to Manus's Text Messages

Manus concedes that the term "call" in § 64.1200(d) applies to both traditional voice calls and text messages. Reply in Supp. of Def.'s Mot. to Dismiss 3, ECF No. 27. Not to be outdone, Stamper accepts that a text is not an "artificial or prerecorded telephone call."[1] *Id.* The parties dispute, however, whether Manus's texts fall within the second category of communications subject to § 64.1200(d): "any call for telemarketing purposes."

Manus claims its texts did not serve a "telemarketing purpose[]" because they provided valuable information about upcoming appointments to preexisting clients. Stamper insists otherwise, construing Manus's communications as marketing, plain and simple.

Stamper has the better argument. The regulation defines "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(13). Manus's texts squarely meet that description. According to the complaint,[2] "many of the messages [were] simply generic

---

[1] Both concessions are well-advised. *See Hudson v. Ralph Lauren Corp.*, 385 F. Supp. 3d 639, 647–48 (N.D. Ill. May 1, 2019) (distinguishing "artificial or prerecorded voice telephone messages" from "text messages"); *Id.* at 646 (noting that the TCPA applies to both "voice calls and text calls to wireless numbers" (citing In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003)); *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1009 (N.D. Ill. 2010) ("[T]he Court agrees with the FCC's interpretation that § 227 of the TCPA applies to text messages.").

[2] At the pleadings stage, the Court accepts all well-pleaded factual allegations in the complaint as true and construes them in favor of the plaintiff. *Hickey v. O'Bannon*, 287 F.3d 656,

marketing notifications regarding appointments that 'just opened up for Manus Dental – Hyde Park.'" Am. Compl. ¶ 11. While some "purport[ed] to be appointment reminders," they were "in fact a product 'pitch' and pretext to persuade consumers to purchase Defendant's dental services." *Id.* at ¶ 12; *see also id.* at ¶ 11 (alleging that the "Defendant's text messages were made for telemarketing purposes").

Manus emphasizes that its messages served an important informational purpose by sharing open appointment slots. The same, however, could be said for nearly any marketing communication. Providing helpful information about a product or service "does not inoculate" an otherwise-unlawful solicitation. *Id.* So long as a call is "motivated *in part* by the desire to ultimately sell additional goods or services," it qualifies as an advertisement subject to FCC regulations. *Abdallah v. FedEx Corp. Servs., Inc.*, No. 16-cv-3967, 2019 WL 4464305, at *6 (N.D. Ill. Sept. 18, 2019) (quoting 2003 FCC ruling, 18 FCC Rcd. 14014, 14098 ¶ 142) (emphasis added); *see also Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817 (N.D. Ill. 2016) (agreeing that "even if the calls were made with the dual purposes of conducting a political survey and selling defendants' vacation products, they are still unlawful, because one of their purposes was to market defendants' products and entice call recipients to purchase them"); *Tony v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 738 (N.D. Ill. 2014) (finding that a call was a "sales call" because defendant, in addition to verifying plaintiff's information, attempted to sell her a program").

Because many—if not all—of Manus's messages to Stamper "encouraged [her] to make future purchases" rather than simply reminded her about existing purchases, the Court finds that they qualify as "telemarketing" and are thus subject to § 64.1200. *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012).[3]

### b. Stamper's Revocation of Consent

Regardless of whether § 64.1200(d) applies, Manus argues that it complied with the regulation by sending only marketing messages to which Stamper had previously consented. Motion 7-9. Manus notes that each time Stamper replied "STOP," she received an automated follow-up text informing her that she had successfully unsubscribed from that particular category

---

657 (7th Cir. 2002). So construed, dismissal is appropriate only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim on which relief may be granted." *Id.*; Fed. R. Civ. P. 12(b)(6).

[3] Resisting this conclusion, the defendant frames its text messages as simply "inform[ing] Plaintiff regarding a patient relationship she previously agreed to enter into" rather than soliciting a new client. Reply 4; *see also id.* at 5 (noting that the plaintiff had "previously consumed . . . the defendant's services" at the time of recipient). That is a distinction without a difference. Marketing can, of course, be directed toward previous customers, and the fact that a defendant seeks *repeat* business does not disqualify its solicitations from than moniker.

of communications and instructing her to "please reply STOPALL" "[i]f you would like to stop all communications from Manus Dental." Compl. 2-4. Stamper never complied. Because Stamper did not text "STOPALL" as directed, Manus contends that the initial consent that she had provided when first receiving Manus services remained in partial effect, undercutting her claim that she received unsolicited communications.

Stamper does not contest that she initially agreed to receive marketing messages from Manus. She also concedes that she never texted "STOPALL." She argues, however, that doing so was unnecessary because her repeated requests that Manus "stop" was sufficient to revoke consent as to all messages.

Section 64.1200(d) is silent regarding how a consumer may validly communicate a do-not-call request. In a 2015 declaratory ruling, the FCC clarified that a "consumer may revoke his or her consent [to receive calls] in any reasonable manner that clearly expresses his or her desire not to receive further calls." 30 FCC Rcd. 7961, 7998-99, ¶ 70 (July 10, 2015); *see also Abdallah*, 2019 WL 4464305, at *6 ("[I]n the absence of a challenge, . . . the FCC's rulings interpreting the TCPA have 'the force of law,' so this court must follow them." (quoting *Blow v. Bijora, Inc.*, 855 F.3d 793, 803 (7th Cir. 2017))); *Chatman v. MiraMed Revenue Grp., LLC*, No. 20-cv-05759, 2022 WL 832642, at *4 (N.D. Ill. Mar. 21, 2022) (adopting the FCC standard); *Dolemba v. Kelly Servs., Inc.*, No. 16-cv-04971, 2017 WL 429572, at *3 (N.D. Ill. Jan. 31, 2017) (same). "When assessing whether any particular means of revocation used by a consumer was reasonable," the Commission "look[s] to the totality of the facts and circumstances surrounding that specific situation, including, for example, whether the consumer had a reasonable expectation that he or she could effectively communicate his or her request for revocation to the caller in that circumstance, and whether the caller could have implemented mechanisms to effectuate a requested revocation without incurring undue burdens." 30 FCC Rcd. at 7996 ¶ 64 n.233.

The Court finds that Stamper did not revoke consent in a "reasonable manner that clearly expresses . . . her desire not to receive [any] further calls." 30 FCC Rcd. at 7998-99, ¶ 70. Screenshots included in the complaint indicate that Stamper had subscribed to at least two different categories of marketing communications: "waitlist messages" and "continuing care recall messages." Compl. 2-4. She also appears to have been the point of contact for at least two other clients (presumably her relatives), since messages refer to her variously as "Bronson" and "Grey." *Id.* By replying "STOP," Stamper clearly communicated a desire to unsubscribe from the specific type of message that she had just received, on behalf of the client to whom that message had been directed. She did not, however, clearly communicate a desire to unsubscribe to any and all text messages from Manus.

*Michel v. Credit Protection Association L.P.* is instructive on this point. In *Michel*, a debt-collection agency left prerecorded messages with a plaintiff who had previously revoked consent. No. 14-cv-08452, 2017 WL 3620809, at *1 (N.D. Ill. Aug. 23, 2017). The court nonetheless found

4

no TCPA violation, reasoning that the revocation applied only to the specific type of communications that directly preceded it—*i.e.*, communications concerning a specific creditor account. *Id.* at *3-5. The revocation did not extend to different accounts held by the same plaintiff, however, leaving the agency free to send messages regarding those accounts without violating the TCPA. *Id.*

The same logic applies here. While Stamper rejected particular categories of messages on behalf of specific clients, she never clearly relayed a broader desire to unsubscribe across the board. To the extent Stamper might have hinted at a desire to opt-out *fully*, any such message was obscured by her repeated refusal to follow easy and transparent instructions for achieving that exact result. *See Viggiano v. Kohl's Dep't Stores, Inc.*, No. 17-cv-0243, 2017 WL 5668000, at *4 (D.N.J. Nov. 27, 2017) (finding that a plaintiff who did not follow instructions to unsubscribe from marketing messages did not have "a reasonable expectation that . . . she could effectively communicate . . . her request for revocation" by other means (quoting 30 FCC Rcd. at 7996 ¶ 64 n.233)). By "ignor[ing] Defendant's clear instruction to stop the messages" "[w]ithout explanation," Stamper undercut any request to completely unsubscribe that her simple message to "stop" might have otherwise implied. *Epps v. Earth Fare, Inc.*, No. 16-cv-08221, 2017 WL 1424637, at *5 (C.D. Cal. Feb. 27, 2017). Accordingly, she failed to effectively revoke consent in full, rendering Manus's continued communications an inadequate basis for TCPA liability.

Stamper objects that Manus had no right to prescribe a single specific method by which she could revoke consent in the first place. Pl.'s Resp. in Opp. to Def.'s Mot. to Dismiss ("Resp.") 9, ECF No. 25. As a general matter, that is correct: Under Section 64.1200, "a caller may not limit the manner in which revocation may occur," 30 FCC Rcd. at 7990 ¶ 47, and "the consumer is not limited to using only a revocation method that the caller has established as one that it will accept," *id.* at 7999 ¶ 70. In this case, however, the complaint does not allege that Manus refused to honor a reasonable method of revoking her consent because Stamper did not engage in any such method. As discussed, the plaintiff's sole chosen means of revocation was not a "reasonable" and "clear[] express[ion]" of a desire to fully unsubscribe. And Stamper does not allege that she attempted to fully unsubscribe by any other reasonable means—by calling, text messaging, or otherwise communicating with an actual Manus representative, for instance. The complaint therefore cannot sustain a claim that Manus proscribed a reasonable alternative path for Stamper to revoke consent; no such path was attempted. *See Epps*, 2017 WL 1424637, at *5 (finding that requiring a recipient to follow simple instructions to unsubscribe from automated marketing texts did not abridge their "right to revoke consent using any reasonable method").[4]

---

[4] Section 64.1200 also prohibits callers from "deliberately design[ing] systems or operations in ways that make it difficult or impossible to effectuate revocations." 30 FCC Rcd. at 7996 ¶ 64 n.233. Stamper does not allege any such violation; and, in any case, the Court would

Stamper concededly agreed to receive Manus's marketing messages when she first signed up for services. By replying "stop," she revoked consent as to the particular threads she had just received but did not reasonably or clearly relate a desire to unsubscribe to all messages. By continuing to send messages to which Stamper had not yet revoked consent, therefore, Manus did not violate § 64.1200(d)'s requirement that telemarketers honor validly communicated do-not-call requests.

### c. Additional § 64.1200(d) Allegations

The complaint alleges that Manus violated a slate of additional requirements contained in § 64.1200(d). Stamper claims, for example, that Manus failed to possess or "implement a written policy for maintaining a do-not-call list and to train its personnel engaged in telemarketing on the existence and use of the do-not-call-list." Compl. 11 ¶ 52, 12 ¶¶ 54-58. Manus contends that those allegations fail to state a claim because they are entirely speculative; their sole factual basis in the complaint is the defendant's purported failure to honor Stamper's requests to unsubscribe. Because Manus in fact did comply with Stamper's limited requests, the defendant contends that Stamper's claim that it lacked adequate policies and training is completely devoid of supporting factual allegations, warranting dismissal under Rule 12(b)(6).

The Court agrees with Manus that the complaint fails to plead a sufficient factual basis from which to infer policy or training violations on the part of Manus. To survive dismissal, a complaint must contain "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[S]heer speculation, bald assertions, and unsupported conclusory statements" will not suffice. *Taha v. Int'l Bhd. of Teamsters, Loc.* 781, 947 F.3d 464, 469 (7th Cir. 2020). Yet Stamper provides *no* basis to conclude that Manus violated the training and written-policy requirements of § 64.1200(d)—apart from her allegation that the company refused to honor her opt-out requests, which the Court has already found insufficient as a matter of law. Indeed, the complaint provides little more than "rank speculation" that the company failed to maintain and train employees on adequate procedures for telemarketing messages. *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 969 (N.D. Ill. 2020). As such, Stamper's unsupported allegations of additional § 64.1200(d) violations fail to state a plausible claim for relief.

\* \* \*

Because Stamper did not reasonably or clearly communicate a request to opt-out from all Manus communications, and because the complaint alleges no other factual basis to conclude that

---

strain to see how requiring consumers to text a short, simple phrase could constitute a "difficult or impossible" hurdle.

6

Manus violated any provision of 47 C.F.R. § 64.1200(d), the Court finds that the plaintiff has failed to state a plausible claim for relief under the TCPA. The defendant's motion to dismiss is granted.

Dated: July 17, 2025

John J. Tharp, Jr.
United States District Judge